# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

TIMOTHY J. LOUGH and
JO ANNE LOUGH,

**Bankruptcy Case
No. 08-02829-JDP**

**Debtors.**

_____

WILLIAM ARTHUR KING,

**Plaintiff,**

**vs.**

**Adv. Proceeding No. 09-6021**

TIMOTHY J. LOUGH and
JO ANNE LOUGH, husband
and wife,

**Defendants.**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

Jerry M. Ward, Boise, Idaho, Attorney for Plaintiff.

Timothy Lough and Jo Anne Lough, Boise, Idaho, Pro Se
Defendants.

MEMORANDUM OF DECISION - 1

### Introduction

On December 11, 2008, Defendants Timothy and Jo Anne Lough ("Defendants") filed a petition for relief under chapter 7[1] of the Bankruptcy Code. Plaintiff William King ("Plaintiff") initiated this adversary proceeding on March 16, 2009, seeking a determination that certain debts owed to him by Defendants should be excepted from discharge pursuant to §§ 523(a)(2), (a)(4), and (a)(6).

The Court conducted a trial in this action on December 17, 2009 at which the parties offered documentary evidence, witness testimony, and made legal arguments. At the conclusion of the trial, the Court took the issues under advisement. Having reviewed the evidence and record, the arguments of the parties, and the applicable law, the Court concludes that

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 2

a portion, but not all, of Defendants' debt to Plaintiff should be excepted

from discharge.[2]

### Facts

Plaintiff is 85 years old, and has been retired for approximately

fifteen years.  Plaintiff holds a life estate in a house in Boise, and he resides

there alone.[3]  Defendants live in the same neighborhood as Plaintiff, and

have been acquainted with him for almost thirty years.  Prior to the events

described below, Plaintiff and Defendants were friends.

Defendant Timothy Lough has experience as a building contractor.

In the spring of 2008, Defendants planned to build a home on nearby

property that they owned, which they hoped to sell for a profit upon its

completion.  In March, 2008, Defendants needed financing to complete the

construction of the house.  They approached Plaintiff and asked him if he

---

[2] This Memorandum sets forth the Court's findings of fact and conclusions of law.  Rule 7052.

[3] Plaintiff testified that there are several conditions attached to his life estate.  He explained that two of those conditions were that he could not be absent from the property for more than six months and that he needed to maintain the property in good condition.

MEMORANDUM OF DECISION - 3

would be willing to loan them $50,000.  Defendants offered to pay the loan

in monthly interest payments of $250 with the principal balance to be

repaid when they sold the house.  In addition, Defendants offered to give

Plaintiff a security interest in a mobile home which they had purchased

several years earlier, which they valued at approximately $30,000.

Plaintiff agreed to loan Defendants the money.  Defendants drafted

a promissory note that incorporated the terms of their agreement, which

Plaintiff and Defendants all signed on March 24, 2008.[4]  Plaintiff gave

Defendants a check for $50,000; Defendants gave Plaintiff the title

---

[4] During the trial, Plaintiff testified as to his understanding of the loan
repayment terms.  According to Plaintiff, in addition to the interest payments
which he was to receive, Plaintiff was to receive additional payments from
Defendants as they received subsequent funding from a third party lender.
Plaintiff explained how that process was to work:  Defendants would purchase
building materials for the home and then present their receipts to a third party
lender, who would then reimburse Defendants for their purchases; Defendants
would then turn over half of that amount to Plaintiff, and use the remaining half
to purchase additional building materials for the house; the process would
continue until the construction was complete.

The promissory note which the parties signed makes no mention of this
process.  The note does, however, indicate that Defendants will "provide receipts
for materials and signed lien waivers from all subcontractors used on [the
house], showing that they have been paid in full."  Ex. 101.

MEMORANDUM OF DECISION - 4

certificate to the mobile home.  Likely oblivious to the legal requirements
to do so, Plaintiff took no steps to perfect a security interest in the mobile
home.

Defendants used the loan proceeds to purchase building materials
for the spec house.  Defendants struggled, however, to make the monthly
interest payments to Plaintiff.  Plaintiff testified that he received only one
check from Defendants for the interest on the loan, but that check
bounced.[5]  At some point, Defendants showed Plaintiff receipts for
building materials which totaled approximately $43,000.  Defendants did
not, however, turn over any money to Plaintiff.

Several months after making loan, an incident occurred in which
Plaintiff was unable to get up off the floor of his home, and was taken to
the hospital by the paramedics.  In late July, 2008, after spending several
days in the hospital and at a rehabilitation center, Plaintiff was persuaded
by family to move into an assisted-living facility located in North Carolina

---

[5]  This check was apparently drawn on Defendants' daughter's bank
account.  The check was not offered into the Court's evidentiary record.

MEMORANDUM OF DECISION - 5

near relatives.  Plaintiff needed to move quickly in order to secure a room

in the facility.  Plaintiff's brother and nephew came to Boise to assist with

his relocation.

To facilitate the move, Plaintiff decided to sell the bulk of his

possessions rather than attempt to move them across the country.  Because

of the nature and number of items to be sold, several auction companies

declined to perform the sale.  Defendants offered to sell the items on

Plaintiff's behalf, and to send Plaintiff the money they received from the

sale.  Plaintiff agreed, and asked Defendants to sell his furniture, the tools

in his garage, his van, and various other small items in his home.

Plaintiff's brother and nephew helped Defendants set up some tables in

the yard so that Defendants could conduct a large yard sale.

In August, after Plaintiff's departure, Defendants conducted the

yard sale at Plaintiff's house.  Although they were unable to sell Plaintiff's

van and several of the larger items of furniture, they sold virtually

everything else.  In addition to the tools, the furniture, and the smaller

personal property items which they had permission to sell, Defendants

MEMORANDUM OF DECISION - 6

also decided to sell (or to give away) the built-in appliances, cabinets,

countertops, light fixtures, a built-in bookshelf, and other items.

Defendants explained that while Plaintiff had not approved the sale of

these items, they understood Plaintiff would not return to the house,

which would ultimately be torn down.  In Defendants' opinion, rather

than let the additional items go to waste, they believed it better that they

get whatever they could for them for Plaintiff.  Defendant Timothy Lough

testified that they received approximately $2,000 from the sale of Plaintiff's

property.

　　　　Defendants never forwarded the sale proceeds to Plaintiff.  Then, in

October, 2008, Plaintiff decided to return to Boise.[6]  Defendants, upon

learning of Plaintiff's decision, sent him an email in which they explained

for the first time that they had sold nearly everything in Plaintiff's home

and urged him to reconsider his decision.  Notwithstanding Defendants

email, Plaintiff decided to return to Idaho.  Thereafter, using the money

---

　　　　[6] Plaintiff had believed his insurance carrier would cover the cost of the
assisted-living facility when he first decided to move to North Carolina; it turned
out that because he was not in a convalescent state, his claim was denied.

MEMORANDUM OF DECISION - 7

which they had received from the earlier sale, Defendants attempted to

replace some of the items that were sold out of Plaintiff's home.

As noted above, Defendants filed their bankruptcy petition on

December 11, 2008.  Plaintiff and his attorney appeared at the meeting of

creditors on January 15, 2009.  Plaintiff's attorney showed the title to the

mobile home to the chapter 7 trustee, who explained that, because

Plaintiff's security interest in the mobile home had not been properly

perfected, it was avoidable, and that the trustee would sell the mobile

home for the benefit of unsecured creditors.  The trustee later did so,

receiving $13,000 for the mobile home.  Plaintiff filed an unsecured proof

of claim for $50,000 in Defendants' bankruptcy case.

## Discussion

Plaintiff seeks a determination that the $50,000 loan he made to

Defendants should be excepted from discharge pursuant to §§ 523(a)(2)

and (a)(4).  In addition, Plaintiff alleges that an additional claim in an

unspecified amount, relating to Defendants' unauthorized sale or disposal

MEMORANDUM OF DECISION - 8

of Plaintiff's personal property from his residence, should be excepted

from discharge pursuant to §§ 523(a)(4) and (a)(6).

Plaintiff seeks entry of a money judgment against Defendants for all

amounts excepted from Defendants' discharge.[7]  The Court recently

commented on the propriety of such a request:

>    It was at one time, questioned whether a bankruptcy
> court could enter a money judgment in a dischargeability
> case.  In *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015 (9th
> Cir. 1997), the debtor argued on appeal that "the bankruptcy
> court lacks jurisdiction to establish whether a debt on an
> unliquidated state law claim exists and to enter judgment on
> that debt."  *Id.* at 1017.  The debtor contended that the court
> should lift the stay, let the state courts liquidate the claim, and
> then the plaintiff could return to seek a determination of
> nondischargeability.  *Id.*  While the court found that
> "procedure is certainly an acceptable method to pursue," it
> was not the sole approach, as reflected by decisions in several
> other circuits.  *Id.*  The court stated:

>>    We are particularly persuaded by the analysis of
>> one bankruptcy judge:

>>>    If it is acknowledged as beyond question
>>> that a complaint to determine

---

[7] "Every . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c), incorporated by Rule 7054.

MEMORANDUM OF DECISION - 9

> dischargeability of a debt is exclusively
> within the equitable jurisdiction of the
> bankruptcy court, then it must follow that
> the bankruptcy court may also render a
> money judgment in an amount certain
> without the assistance of a jury. This is
> true not merely because equitable
> jurisdiction attaches to the entire cause of
> action but more importantly because *it is
> impossible to separate the determination of
> dischargeability function from the function of
> fixing the amount of the non-dischargeable debt.*

> [*Snyder v. Devitt (In re Devitt)*], 126 B.R. 212, 215
> (Bankr. D. Md. 1991).

> We conclude, in conformity with all of the circuits
> which have considered the matter, that the bankruptcy
> court acted within its jurisdiction in entering a money
> judgment against Kennedy in conjunction with a
> finding that the debt was nondischargeable. [*Kennedy*,
> 108 F.3d at 1017-18].

*Netwest Commc'ns Group, Inc. v. Mills (In re Mills)*, 08.3 I.B.C.R. 109, 113

(Bankr. D. Idaho 2008) (emphasis added in *Mills*). Here, as in *Mills*, given

the nature of Plaintiff's allegations in this adversary proceeding, his prayer

for relief, and the nature of the legal theories, the Court must also

MEMORANDUM OF DECISION - 10

determine the amount of any alleged damages as a component of his

§ 523(a) claims.

The standard of proof for discharge exceptions under § 523(a) is

preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The statutory exceptions to discharge are strictly construed against the

creditor and liberally in favor of the debtor. *Spokane Ry. Credit Union v.*

*Endicott (In re Endicott)*, 254 B.R. 471, 475 n. 5, 00.4 I.B.C.R. 199, 200 (Bankr.

D. Idaho 2002) (citing *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.

1992)).

### A.    The Construction Loan.

### 1.    False representations or actual fraud.

Section 523(a)(2)(A) excepts from discharge any debt obtained

through "false pretenses, a false representation, or actual fraud." 11 U.S.C.

§ 523(a)(2)(A). To fall within this exception to discharge, a creditor must

prove that (1) the defendant made a representation; (2) which at the time

the defendant knew was false; (3) the representation was made with the

intent to deceive; (4) the plaintiff justifiably relied on the representation;

MEMORANDUM OF DECISION - 11

and (5) the plaintiff sustained the alleged loss as the proximate result of

the representation. *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 827

(9th Cir. 2002); *Am. Express v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125

(9th Cir. 1996); *Wells Fargo Bank Northwest N.A. v. Covino (In re Covino)*, 04.3

I.B.C.R. 98, 103-04 (Bankr. D. Idaho 2004).

Plaintiff alleges that Defendants made material misrepresentations

to him regarding how the loan was to be repaid. Specifically, Plaintiff

contends that not only did Defendants agree to show Plaintiff receipts for

the building materials that they purchased, but also that they would give

him a portion of the money they received from their new lender on

account of those receipts. Plaintiff argues that because no money was ever

turned over to him, those representations must have been false. Plaintiff

further contends that Defendants' failure to disclose to him information

about their finances, or to identify the lender who would be financing the

construction of the spec house is indicative of fraud.

Consistent with the promissory note, Defendants maintained that

their agreement with Plaintiff was to make monthly interest payments of

MEMORANDUM OF DECISION - 12

$250, and then to pay him the principal balance when the house ultimately sold.  Notwithstanding this testimony, though, they did not deny that they also represented to Plaintiff that they would pay him additional funds when they received reimbursements from another party.  However, even if such a representation was made, there is no indication in the record that the representation was false, that Defendants knew that it was false at the time it was made, or that it was made with the intent to deceive Plaintiff. Furthermore, there is no evidence in the record showing that Defendants were ever asked to disclose financial information about themselves or to identify the third party lender.  To the contrary, Plaintiff repeatedly testified that he never asked Defendants for any financial disclosures, and that he simply trusted them.

In short, Plaintiff has failed to show by a preponderance of the evidence that the $50,000 construction loan should be excepted from Defendants' discharge for fraud pursuant to § 523(a)(2)(A).

**2.    Fraud while acting in a fiduciary capacity.**

MEMORANDUM OF DECISION - 13

A discharge in bankruptcy does not discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). Plaintiff does not contend that embezzlement or larceny were implicated in the construction loan. However, Plaintiff argues, citing Idaho Code § 53-3-202[8], that he and Defendants were partners in the construction of a spec home, and as such, Defendants owed Plaintiff fiduciary duties, which they violated. As a result, Plaintiff contends Defendants' construction loan debt must be excepted from discharge. *See Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996) (holding that "Arizona law imposes upon partners a fiduciary duty within the meaning of section 523(a)(4).").

In *Lewis*, the Ninth Circuit explained that the broad, general definition of a "fiduciary" is inapplicable in the context of dischargeability litigation. *Lewis*, 97 F.3d at 1185 (citing *Ragsdale v. Haller*, 780 F.2d 794, 795

---

[8] This statute provides, in pertinent part, that "the association of two (2) or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intended to form a partnership." Idaho Code § 53-3-202(a).

MEMORANDUM OF DECISION - 14

(9th Cir. 1986)).  "Instead, the fiduciary relationship must be one arising

from an express or technical trust that was imposed before and without

reference to the wrongdoing that caused the debt." *Id.*  Given that narrow

scope, the issue in *Lewis* was whether, under Arizona law, a partnership

embodied an "express" or "technical" trust relationship within the

meaning of § 523(a)(4).  Ultimately, the court concluded that it did.

But there are several key distinctions between this case and *Lewis*.

In *Lewis*, the parties had entered into a formal, written partnership

agreement.  *See Lewis*, 97 F.3d at 1184.  In this case, no such agreement was

ever made.  Rather, Plaintiff argues that the existence of a partnership may

be implied from the circumstances.  The Court disagrees.

Based upon this record, there is no persuasive evidence that the

construction loan created an implied partnership between Plaintiff and

Defendants under state law.  It is undisputed that Plaintiff was not to be a

co-owner of Defendants' business, or even that he acquire any equity in

the spec house.  There is also no evidence that Plaintiff and Defendants

were to share any risks or profits from this venture.  Plaintiff gave

MEMORANDUM OF DECISION - 15

Defendants $50,000, which Defendants committed to repay with interest, whatever the outcome of the spec house project. It is clear that Plaintiff was merely Defendants' creditor who loaned money to finance a single project. As a result, *Lewis* offers little support to Plaintiff's argument in this case.

Plaintiff has not shown that Defendants were fiduciaries, and thus his claim against them under § 523(a)(4) fails with respect to the construction loan.

**B.    The Yard Sale.**

Plaintiff's claim against Defendants under § 523(a)(4) resulting from the yard sale is not premised on any breach of fiduciary duties. He alleges instead that Defendants are guilty of embezzlement and larceny. The phrase "while acting in a fiduciary capacity" in § 523(a)(4) does not qualify embezzlement or larceny. *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 774 (Bankr. S.D. Texas 2008) (citing 4 Collier on Bankruptcy ¶ 523.10[1][d] (15th ed. 2005)). Under these facts, both embezzlement and larceny apply.

MEMORANDUM OF DECISION - 16

**1.    Embezzlement of the proceeds from the sale of personal property.**

Federal law, not state law, controls the definition of embezzlement for purposes of § 523(a)(4). *Brown v. Felsen,* 442 U.S. 127 (1979). Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been [e]ntrusted or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 269 (1895). In the context of nondischargeability, a creditor  seeking to prove embezzlement must establish three elements: (1) that property was rightfully in the possession of a nonowner, (2) that the nonowner appropriated the property to a use other than which it was entrusted, and (3) circumstances indicating fraud. *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 555 (9th Cir. 1991); *First Delaware Life Ins. Co. v. Wada (In re Wada),* 210 B.R. 572, 576 (9th Cir. B.A.P. 1997); *Kiss Enters., Inc. v. Mirth (In re Mirth),* 99.4 I.B.C.R. 148, 151 (Bankr. D. Idaho 1999).

Prior to moving to North Carolina, Plaintiff gave Defendants access to, and permission to sell, his furniture, his tools, and various other small

MEMORANDUM OF DECISION - 17

items of personal property.  Defendants planned a yard sale to accomplish that end.  Plaintiff instructed Defendants to send the proceeds from that sale to him in North Carolina.

After Plaintiff's departure, Defendants conducted the yard sale and received approximately $2,000 for Plaintiff's property.  Inexplicably, they did not, however, forward that money to Plaintiff, though they both testified that it was never their intention to misappropriate the money.  Upon learning that Plaintiff was returning to his home in Boise, Defendants used the money to purchase replacements for the appliances and fixtures which they were not authorized to sell.

Under these facts, the required elements for embezzlement are satisfied.  Because Defendants were given permission to sell Plaintiff's personal property, there were rightfully in possession of the proceeds from that sale.  When they used that money to purchase replacement property, rather than forward it to Plaintiff, they appropriated that money for a use other than that for which it was entrusted.  Despite Defendants' testimony that it was never their intention to harm Plaintiff or to deprive him of the

MEMORANDUM OF DECISION - 18

money, the fact remains that three months passed without them fulfilling

Plaintiff's wishes.  Indeed, when asked directly at trial, Defendant Timothy

Lough responded that he did not know why Defendants did not give

Plaintiff his money.  Under these circumstances, the Court declines to

believe that Defendants never intended to deprive Plaintiff of these funds.

Plaintiff has shown adequate evidence of fraud in this regard.

Accordingly, Plaintiff holds a nondischargeable claim against

Defendants for $2,000 stemming from their misappropriation of the

proceeds from the yard sale pursuant to § 523(a)(4).

### 2.    Larceny of built-in appliances and other fixtures.

To prevail under § 523(a)(4) for larceny, a creditor must prove that

"the debtor has wrongfully and with fraudulent intent taken property from

its owner." *In re Mirth*, 99.4 I.B.C.R. at 151.  "Larceny differs from

embezzlement in the fact that the original taking of property was unlawful,

and without the consent of the injured person." *Custer v. Dobbs (In re

Dobbs)*, 115 B.R. 258, 265 (Bankr. D. Idaho 1990).

MEMORANDUM OF DECISION - 19

Defendants candidly admitted that they did not have permission to sell Plaintiff's built-in appliances and other fixtures. They maintained, however, that their purpose in doing so was not fraudulent, but was an honest attempt to help Plaintiff recover more money from his belongings in Idaho.

Of course, Defendants' motives must be viewed in light of their failure to promptly account to Plaintiff for liquidating the items he did not give them permission to sell. The Court naturally wonders, if Defendants' conduct was prompted by their beneficent desire to help Plaintiff, why Defendants held that money rather than turn it over to him. Defendants were unable to solve this riddle at trial. As things turned out, rather than returning to a home equipped with appliances and fixtures, and $2,000 in proceeds from the sale of furniture and tools, Plaintiff found a home stripped of many[9] of the appliances and other fixtures he needed, and no

---

[9] Defendants testified that they had replaced "some" of the fixtures and cabinets, but Plaintiff complained that the quality of workmanship was such that nobody would have accepted it.

MEMORANDUM OF DECISION - 20

cash to help replace the furniture and other property which he authorized

Defendants to sell.

While it may seems harsh to them, the Court concludes that with

respect to the value of Plaintiff's built-in appliances and fixtures sold by

Defendants without permission, Defendants are guilty of larceny for

purposes of  § 523(a)(4).

Even so, Plaintiff gave the Court no proof of any value regarding the

amount of damages he suffered from Defendants' actions.  There was no

credible testimony offered as to the value of the items wrongfully removed

from Plaintiff's home.  Plaintiff did offer into evidence, without objection

from Defendants, a number of receipts that appear to itemize various

appliance and furniture purchases which may have replaced items

wrongfully taken.  However, Plaintiff in no way tied these receipts to

Plaintiff's claim.[10]  As noted in *Mills*, "exceptions to dischargeability are

strictly construed, and a plaintiff must prove its case by a preponderance

---

[10]  The Court is at a loss why, with the apparent availability of proof,
Plaintiff's counsel did not comprehensively address this topic.

MEMORANDUM OF DECISION - 21

of the evidence.  [Plaintiff] cannot rely upon the court to fill evidentiary

gaps with supposition."  08.3 I.B.C.R. at 116 (additional citations omitted).

Because the Court is unable to quantify any damages Plaintiff

suffered through Defendants' larceny of his built-in appliances and

fixtures, the Court is unable to grant him relief on this claim.[11]

## Conclusion

Defendant Timothy Lough observed at trial that these bankruptcy

proceedings have "driven a wedge pretty deep" between former friends

and neighbors.  Plaintiff, an elderly and apparently kind-hearted neighbor

intent on helping his friends has lost much from this relationship.

However, Defendants are entitled under the Bankruptcy Code to a

financial fresh start free from the burden of their dischargeable debts.

Because the Court must act according to statute, not on moral grounds,

---

[11]  Plaintiff also cited § 523(a)(6) in support of his claim that damages stemming from the sale of Plaintiff's personal property should be excepted from discharge.  Although Plaintiff obviously makes a strong case for conversion, given the Court's findings with respect to § 523(a)(4), additional analysis under § 523(a)(6) is not necessary.

MEMORANDUM OF DECISION - 22

only a portion of Plaintiff's claims against Defendants can be excepted

from discharge.[12]

A separate judgment will be entered.

Dated:  January 15, 2010

Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[12]  Defendants might consider § 523(f) which provides that  "[n]othing contained in [the Bankruptcy Code] prevents a debtor from voluntarily repaying any debt."

MEMORANDUM OF DECISION - 23